**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| GRAHAM HIGTON and ) | |
| JANET HIGTON, ) | |
| ) | |
|        Plaintiffs, ) | 2:10-cv-01320 JWS |
| ) | |
|    vs. ) | **ORDER AND OPINION** |
| ) | |
| QUICKEN LOANS, INC., *et al.*, ) | [Re: Motion at Docket 21] |
| ) | |
|     Defendants. ) | |
| ) | |

**I.  MOTION PRESENTED**

At docket 21, defendant Quicken Loans, Inc. ("Quicken") moves pursuant to

Federal Rule 12(b)(6) to dismiss plaintiffs' first amended complaint for failure to state a

claim upon which relief may be granted.  Plaintiffs Graham and Janet Higton ("plaintiffs"

or "the Higtons") oppose the motion at docket 22.  Quicken's reply is at docket 27.  Oral

argument was not requested and would not assist the court.

**II.  BACKGROUND**

This suit arises out of the refinancing of plaintiffs' home.  On February 20, 2007,

plaintiffs borrowed $600,000 from Quicken.  The loan was secured by a deed of trust on

the Higtons' residence.  Plaintiffs maintain that Quicken deliberately overstated their

monthly income to qualify them for a loan that was "designed for failure."[1]  Plaintiffs
allege that the introductory interest rate of 3.5%–applicable for the first five years of the
loan–was never disclosed to them.  Plaintiffs made payments at the introductory rate for
approximately three years.  On March 26, 2010, plaintiffs received a letter from
Quicken, informing them that they risked default because the "loan to value" ratio was
approaching its maximum of 115%.

On May 20, 2010, out of fear that Quicken would foreclose on the loan and that
they might be forced out of their home, plaintiffs filed suit in Arizona state court.  The
case was removed to federal court on June 23, 2010.  Plaintiffs originally named
Quicken and Indymac Financial Services.  One West Bank was substituted for Indymac
Financial Services and then voluntarily dismissed on October 21, 2010.  Plaintiff has
asserted claims against Quicken for intentional misrepresentation, consumer fraud,
quiet title, and violation of the Truth in Lending Act.[2]

### III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil
Procedure 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a
motion, "[a]ll allegations of material fact in the complaint are taken as true and
construed in the light most favorable to the nonmoving party."[3]  Dismissal for failure to
state a claim can be based on either "the lack of a cognizable legal theory or the

---

[1]Doc. 14 ¶ 16.

[2]15 U.S.C. § 1601 *et seq.*

[3]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

absence of sufficient facts alleged under a cognizable legal theory."[4]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[5]  To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[9]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[10]

---

[4]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[5]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[6]*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[7]*Id.*

[8]*Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[9]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[10]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV.  DISCUSSION

**A. Intentional Misrepresentation Claim**

### 1. Statute of Limitation

Quicken argues that plaintiffs' fraud claim is time-barred.  Plaintiffs do not respond to this argument in their opposition.  Arizona has a three-year statute of limitation for actions seeking "relief on the ground of fraud or mistake, which cause[s] of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[11]  Plaintiffs do state that they "would not have entered into the loan . . . had [they] known the true facts."[12]  As discussed below, it is unclear whether any of the "true facts" were not included in the loan documentation.  Plaintiffs' complaint indicates that an attorney's review of the loan documents led to discovery of the fraud.[13]  If all of the necessary information was disclosed to the Higtons in the loan documents, then the fraud claim is time-barred.  The claim would have accrued at closing, in February of 2007, and the lawsuit was not filed until May of 2010.

### 2. Misrepresentations and Nondisclosures

The elements of common law fraud are

(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated;

---

[11]A.R.S. § 12-543(3).

[12]Doc. 14 ¶ 34.

[13]*Id.* ¶ 35.

(6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.[14]

The Higtons assert five potential bases for their fraud claim.[15]

The Higtons first allege that an introductory interest rate of 3.5% was not disclosed to them, "leading [them] to believe they were not in a negative amortization loan."[16]   However, the Federal Truth-In-Lending Statement provided to and signed by the Higtons included a schedule that began with fifty-two monthly payments of $1750.[17] Simple multiplication and division are all that would have been necessary to determine that the introductory rate was 3.5%.[18]

More importantly, the loan documentation clearly states that "because [the Higtons'] Limited Payment [was] less than the interest that has actually accrued on [their] Note, the Note Holder [would] subtract the amount of [their] monthly payment from the amount of the actual accrued interest and [would] add the difference to [their] unpaid principal (this is referred to as 'negative amortization')."[19]   "Negative amortization" is in bold typeface.[20]   It is therefore unclear how nondisclosure of an

---

[14]*Nielson v. Flashberg*, 419 P.2d 514, 517–18 (Ariz. 1966).

[15]Doc. 22 at 4–6.

[16]Doc. 14 ¶ 16; *see* doc. 22 at 4.

[17]Generally, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.  Such consideration does not convert the motion to dismiss into a motion for summary judgment." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (internal quotations omitted).

[18]$1750 x 12 months = $21,000. $21,000 / $600,000 = .035

[19]Doc. 21-1 at 10.

[20]*Id.*

-5-

introductory rate would lead the Higtons to conclude otherwise.  Quicken could not have intended for the Higtons to think they were not taking out a negative amortization loan when the documentation that Quicken provided clearly stated that they were.  Plaintiffs have therefore not pled facts supporting the fifth element of common law fraud with respect to nondisclosure of the introductory rate.

The second misrepresentation that the Higtons allege is "a fraudulently overstated income figure in the loan application."[21]  The Higtons maintain that Quicken intentionally overstated their monthly income to be $13,000, when it was actually closer to $4,000, to ensure that they would qualify for the loan.

Assuming the first through third elements to be met, the Higtons have not pled facts plausibly supporting the fourth element of common law fraud because the Higtons certified to Quicken that the $13,000 per month income figure was "true and correct" as of February 20, 2007.[22]  Quicken's intent could not have been for the Higtons to act on the false statement of monthly income because the representation was not made to them, but rather to employees of Quicken who were evaluating the loan.  Moreover, the Higtons would have known the information to be false, foreclosing fulfilment of the sixth element.  The Higtons are also unable to plead reliance or a right to rely on any false income figure.  The Higtons' fraud claim therefore cannot be based on the certified income figure in their loan application.

---

[21]Doc. 22 at 4.

[22]Doc. 21-1 at 4.

The third potential basis for the Higtons' fraud claim is identical to the first.[23]  It is unnecessary to separately analyze plaintiffs' third offered basis for their fraud claim.

As a fourth possible foundation for their intentional misrepresentation claim, plaintiffs state that "Quicken induced [them] to enter into the loan transaction on the false belief that the Introductory Payment could be made for five (5) years, or sixty (60) months."[24]  Plaintiffs cite to paragraph 16 of their complaint.  The only fact in paragraph 16 potentially giving rise to a fraud claim is, again, nondisclosure of the introductory rate.

Finally, the Higtons maintain that "Quicken made verbal representations . . . that [the Higtons] could refinance the loan at a later date" when the negative amortization characteristic of the loan "would make refinance impossible."[25]  Again, the only citation is to paragraph 16 of the complaint.  If Quicken made misrepresentations as to subsequent refinancing, the Higtons have not described them in their complaint.

---

[23]*Compare* doc. 22 at 4 ("Quicken did not disclose what interest rate [the Higtons] would pay on the Introductory Payment") *with* doc. 22 at 5 ("Quicken failed to disclose what interest rate [the Higtons] would pay on the Introductory Payment").

[24]Doc. 22 at 5.

[25]*Id.* at 6.

**B. Consumer Fraud Claim**

**1. Statute of Limitation**

Because "[a] consumer fraud claim is created by statute [it] must be initiated within one year after the cause of action accrues."[26]  In Arizona, a cause of action for consumer fraud accrues "when the defrauded party discovers or with reasonable diligence could have discovered the fraud."[27]  As with the Higtons' common law fraud claim, reasonable diligence would have uncovered any fraud in the loan documentation at closing.  Therefore, neither Quicken's alleged misstatement of the Higtons' monthly income, nor nondisclosure of the introductory interest rate can provide the basis for a consumer fraud claim.  Unless there is an alternative basis for the Higton's consumer fraud claim, it is time-barred.[28]

**2. Misrepresentations and Nondisclosures**

Arizona's Consumer Fraud Act prohibits any "deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment . . . with intent that others rely upon [it] . . . in connection with the sale or advertisement of any merchandise."[29]  "The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the sale or advertisement of

---

[26]*Alaface v. National Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994) (internal citations omitted).

[27]*Id.* (internal quotations omitted).

[28]Plaintiffs' complaint states that "Quicken failed to provide all relevant and material disclosures."  Doc. 14 ¶ 39.  This could encompass actionable nondisclosures.

[29]A.R.S. § 44-1522(A).

merchandise and the hearer's consequent and proximate injury."[30]  Because consumer

fraud claims based on the alleged misrepresentation of plaintiffs' monthly income and

nondisclosure of the introductory interest rate would be time-barred, plaintiffs have not

adequately pled facts supporting the elements of a consumer fraud claim.

## C. Quiet Title Claim

Quicken argues that plaintiffs fail to allege facts supporting a claim against

Quicken to quiet title to plaintiffs' residence.  In Arizona, "[a]n action to . . . quiet title to

real property may be brought by any one having or claiming an interest therein . . .

against any person [who] claims an . . . interest in the real property which is adverse to

the party bringing the action."[31]  The Higtons' complaint states that Quicken has an

interest in their residence "based on the deed of trust."[32]  The court agrees.  Although

MERS is the beneficiary of the deed of trust, it assumed that role "solely as nominee" for

Quicken and Quicken's successors and assigns.[33]  Furthermore, the deed states that it

secures repayment of the loan *to Quicken*.[34]  Although plaintiffs' claim does not appear

very strong, it does not fail based on Quicken's disclaimed interest in the property.

---

[30]*Dunlap v. Jimmy GMC of Tucson*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983).

[31]A.R.S. § 12-1101(A).

[32]Doc. 14 ¶ 51.

[33]Doc. 21-1 at 17.

[34]*Id.*

**D. Truth In Lending Act Claim**

The Higtons' complaint alleged three bases for claims under the Truth in Lending Act: 1) failure to make variable rate disclosures; 2) failure to disclose the APR; and 3) asset-based lending.  Plaintiffs' reply indicates that they are no longer pursuing TILA claims relating to interest rate disclosure, leaving only the claim of asset-based lending.[35]  Quicken argues that any claim under TILA is time-barred.  Plaintiffs do not respond to that argument in their opposition.

Under 15 U.S.C. § 1640(e), any TILA damages action must be brought "within one year from the date of the occurrence of the violation."[36]  Here, the pled violation would have occurred no later than February of 2007.[37]  Plaintiffs' complaint was filed in May of 2010.  Plaintiffs' TILA claim is therefore time-barred.

The Higtons maintain that they "are entitled to equitable tolling because [they] were in no position to discover the violations of TILA until a forensic review of their loan documents was conducted on April 1, 2010."[38]  "[E]quitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action."[39]  "The doctrine applies in situations where, despite all due diligence, the party seeking equitable tolling is unable to obtain vital information bearing

---

[35]Doc. 22 at 10.

[36]15 U.S.C. § 1640(e).

[37]*See Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003).

[38]Doc. 14 ¶ 65.

[39]*King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

on the existence of the claim, or where the party invoking the doctrine has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."[40]  "The doctrine is not available to avoid the consequences of one's own negligence."[41]

Plaintiffs' argument that they "are not mortgage professionals" is insufficient.[42] Plaintiffs have not adequately pled that they were unable to obtain vital information bearing on the existence of their claim within the limitation period.

## E. Punitive Damages

Finally, Quicken argues that the Higtons have failed to plead facts sufficient to support punitive damages.  The court disagrees.  Plaintiffs' overarching theory–that Quicken was motivated by an intent to defraud–is consistent with a claim for punitive damages.[43]  Because punitive damages do not constitute an independent legal claim, however, their availability will depend on the ensuing viability of plaintiffs' tort claims.

## F. Leave to Amend

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of

---

[40]*Hensley v. United States*, 531 F.3d 1052, 1057–58 (9th Cir. 2008) (internal citations and quotations omitted).

[41]*Id.*

[42]Doc. 14 ¶ 65.

[43]*See, e.g., Volk v. Coleman Co.*, 748 P.2d 1191, 1194 (1987) (The punitive damages standard "is satisfied by evidence that defendant's wrongful conduct was motivated by . . . intent to defraud.") (internal quotations omitted).

other facts."[44]  Plaintiffs have requested leave to amend.  Although the court is skeptical

that plaintiffs will be able to overcome the obstacle posed by applicable statutes of

limitation, a "court should freely give leave [to amend] when justice so requires."[45]

## V.  CONCLUSION

For the foregoing reasons, Quicken's motion at docket 21 to dismiss the

complaint pursuant to Federal Rule 12(b)(6) is **GRANTED** in part and **DENIED** in part

as follows:

1) It is **GRANTED** insofar as the intentional misrepresentation, consumer fraud,

and TILA claims against Quicken are **DISMISSED** without prejudice to an amended

complaint.  Any such amendment must be filed within 14 days of this order.

2) It is **DENIED** with respect to plaintiffs' claim to quiet title.

DATED this 28th day of January 2011.


                                        /s/
                                JOHN W. SEDWICK
                            UNITED STATES DISTRICT JUDGE


---

[44]*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995)).

[45]Fed. R. Civ. P. 15(a)(2).